Mr. Burke, you're up. We're asking this court to reverse his conviction on second-degree murder and send it back for a new trial as to that count, count one, the other counts on armed violence and aggravated battery with a firearm. Those will be affirmed. There's a couple of things here really that are not in dispute. The facts are what the facts are. Mr. Chapman shot Devoshi Darden in the chest and killed him. Another fact that's not in dispute. Devoshi Darden, just before that happened, had at least one time lifted up his shirt in a movement that suggested he had a gun. It's not inconsistent with second-degree murder that he lifted up his shirt a second time. It's not inconsistent with second-degree murder that he had a gun. It's not inconsistent with second-degree murder that he pulled that gun. And there is evidence that he pulled the gun. He certainly had the gun in his hand when Mr. Chapman shot him in that hand or shot him in that arm. And certainly one witness said somebody took two guns away from the scene of the crime. There were three propositions the state had to prove the first-degree murder. The first one was that Mr. Chapman shot him. Mr. Chapman admits shooting him. Mr. Chapman testified, I shot him. He also testified, I shot Devoshi's brother, Tenario, in the buttocks. The second proposition the state had to prove was that he either intended to kill Devoshi or he knew that that was going to kill Devoshi or reasonably he should have known that that was going to kill Devoshi. He shot him in the chest. That wasn't in dispute either. The one thing that was in dispute in the entire case was whether he was justified. If he was justified, he killed him in self-defense and he was not guilty. If he wasn't justified, he was guilty of first-degree murder. If he thought he was justified but that was unreasonable, then he was guilty of second-degree murder. The jury deliberated for 13 hours and there was really only one question before the jury. The jury sent out several notes. The notes that asked questions, some of them are about being a home jury. The notes that asked questions all focused on justification, whether there was justification or there was a reasonable belief in justification. Somehow they focused on justification, every note. Maybe not with the first note, maybe not with the second note, but at some point in time, the judge should have provided some guidance to that jury. They're deliberating 13 hours overnight, deliberating into the evening, coming back the next day, deliberating more, sending out notes. The judge should have provided some guidance to that jury about the whole idea of justification on first-degree, second-degree, and not guilty. And the defense counsel didn't object to this. Why isn't there a waiver? Why isn't there a waiver? Pardon me? Why isn't there a waiver then? There is a waiver, Your Honor. Okay. On the second prong or maybe on the first prong of plain error, as best I can tell, that's the same test as ineffective assistance of counsel. Evidence was close enough that but for this mistake, the jury might have done something differently. And I think that applies in this case. They deliberated 13 hours on one question. That was a close question. Do you agree they were properly instructed? You just agree that you're contending the trial judge should have done something? Do you agree they were properly instructed? Not guilty of murder? Literally. I have my own opinions on that, but I believe that the jury's opinion were properly instructed. I got you. According to IPI. Yes. We'll just limit it. He followed the IPI pattern instructions. Yes, sir. What would we be telling the judge that he should have said? I mean, you're saying he should have done something, but he's in that position after 13 hours. He knows he's instructed him correctly. What was he supposed to say? Well, I wrote down what I would have said. Okay. I'd like to hear it. I want to run out of time. On the first question, the murder charge is the only three options, first degree, second degree, or third choice not guilty. And I don't think he had answered the first question. But I would have answered, if I was going to answer, if you sign that form, not guilty of first degree murder, which also was not guilty of second degree murder. You sign that form, the deliberations of murder should end, and you should consider the other charges. Now, if he was going to answer, I think he should have answered like that. Now, maybe on the first question, give it a pass. Let's see what the jury's going to do. Then later, that same evening, the jury is a second, a verdict second degree if we think he believes, he reasonably believes that force was needed. If I was going to answer that one, then that one I might have. If you find that he believed he was justified, then you must decide whether that belief was reasonable. The third note that night says we cannot decide. Next morning, first note, we cannot agree. Then another note at, I believe, 1040 in the morning. We are close to an 11-1 decision. Can we agree upon second degree? I would have answered that question. By then, I would have answered the question. And I would have said the state must prove the third proposition beyond a reasonable doubt. If it does, go on to deliberate second degree murder. If it does not, you should sign the not guilty verdict. If they prove the third proposition, then you decide second degree. If they haven't proved the first proposition, then you vote not guilty. I think that, and I know trial judges are in a difficult place. And you're, in effect, paraphrasing the IPI instruction when you do that. Well, maybe some defense-oriented language snuck in there. Don't blame you. Okay. I'm a defense attorney. Thank you. And then on the other prong of plain error, the justice, the violence of the criminal justice system, I think in this kind of case it does that because there's a very good chance that he is an innocent man. The jury wrestled with that question. They ultimately decided on second degree. Their questions tell me they could have voted not guilty on first degree murder and second degree murder. Because they could have voted that way, and it's such a close case, I think that that is violence of this justice system because he may be an innocent man. And it should go back for a trial where the judge, if the jury, has questions and instruct them in answering their questions. I think the instructions are confusing myself. But the last question from the jury, that they're 11 to 1, and then they start talking about, you know, on the first and second proposition, we know where we're at. But on the third, we can't agree. And then they bring up the second degree again. I mean, it seems to me that at that point the trial judge could have really clarified something for this jury. That's the one where I think that he should have given an answer. The first couple of questions about the jury instructions tell him to keep deliberating. But by that, it was obvious. The court recognizes the complex nature of the instructions, but then he doesn't bring them out to tell them what's not complex or how to justify their decision. Your Honor, I believe that there are challenges going to be coming down the road on that instruction, but it's not rightful decision in this case.  Thank you, counsel. You're all confused. Don't you think they're confusing, Mr. Tate? Your instructions and then the questions start getting more complex? Your Honor, in all honesty, the questions or the jury instruction is a bit confusing, in that it's first degree murder, second degree murder, or not guilty. And the jury was always saying, is it not guilty of first degree, but guilty of second? Is it not guilty of both? That's what they were wanting, and I think that's reasonably what we can all agree. But that is not the issue here. That's not the question of whether or not they were or were not confusing. As the People v. Reed court stated specifically, while the circuit court within its discretion could directly answer the jury's question by explaining the law instead of referring it to the jury instructions, the circuit court had no duty to do so under the circumstances of this case. Now, I point this court directly because it seems as though the defendant has agreed that a stopper applies here and that the defendant, by not making an objection and actually helping Reed… Reed was a murder and armed robbery. Yes. Not confusing. But, however, Your Honor, here's the difference. The Reed holding is that a trial court has discretion on whether or not to pass a response, and that is what we're using as the rule of law. However, getting to the particular jury instruction that you're questioning, well, that's – this is a more complex jury instruction. The Illinois Supreme Court has given a direct mandate in People v. Parker, which you can find on page 9 of my brief, and that court specifically wrote a jury instruction, IPI number 7.06B, which is this particular jury instruction. And it held that jury instructions just like this one are clear enough for a jury to make a verdict. In and of themselves, that may be true, but when a jury says we're confused, it sends out these kinds of questions, especially that last one. Don't you think a trial judge has a responsibility to try to make sure that they're not making a mistake? A trial court has a responsibility to make sure the jury has the law for it, has the ability to make deliberations on the law from the jury instructions. People v. Parker says particularly that this jury instruction is clear. The trial court has discretion to give the answers that the defendant has here fashioned in response to, and in some ways it's state of the degree that that will perhaps be another course to go. But the question is whether or not the trial court was required to do so, and that much is clear. The trial court was not required to do so. The jury instructions have been clearly mandated by the Illinois Supreme Court that they in and of themselves are clear enough to make a verdict from. Therefore, the trial court was under no obligation at all to clarify what the Illinois Supreme Court has already directly stated is a clear instruction. Moreover, Your Honors, I will point this court to the variety of cases which state that when a defendant acquiesces to the trial court's answer to answer a question from the jury, the defendant cannot later then complain that the trial court's answer was an abuse of discretion. As this court stated in People v. Bean, abuse of discretion, aside from no review at all, abuse of discretion is the most favorable standard of review. As the Abbott court stated, and I quote, to allow a defendant to object on appeal to the trial court's response to the jury's questions that he agreed to at trial would offend all notions of fair play. Here, if the defendant had objected and jury number 1, 2, 3, 4, 5, 6, or 7 had at any time made an objection and said the jury does not understand these instructions, the judge would need to have a response that's better than just refer back to the jury instructions. But the defendant failed to do so. In fact, the defendant went one step further. This is beyond mere waiver. This is estoppel because the defendant— Was this a court-appointed attorney? I believe it was a public defender, but I'm not sure. I'll have to tell him. Okay. Not that it makes a whole lot of difference at all, but I'm just curious. I'm unclear whether or not he had a public defender or not. But regardless, the question remains that the issue here is not whether he had a court-appointed attorney or an attorney that he hired, because either way, all that attorney needed to do was make an objection. By failing to make an objection to any of those instructions and, in fact, helping to create the responses to those instructions, the defendant simply cannot come back on appeal and state, if a matter of fact is that the jury was confused. The jury may have been confused, but if the defendant helps in fashioning responses back to the jury, then the entire process, the system of judicial integrity would be entirely compromised by saying that the defendant can then come back on appeal and say those instructions, which I agreed on, are now unfair. That's an integral process in which the defendant was involved in in creating those responses. And the defendant's only response as to why he's not particularly estopped from this and not even getting to the plain error doctrine, which, again, as I've mentioned before, there's no plain error because the Illinois Supreme Court has said the jury instructions are not fair. The jury instructions are proper. The only reason the defendant states that he was not estopped was because he objected to the jury instruction. But a jury instruction is separate and distinct from actually fashioning responses. The issue here is whether or not the trial court responses were, in fact, proper. So the defendant cannot magically transform a prior objection to an instruction and then cater it or create it or recharacterize it as an objection to the responses. Simply put, Your Honors, the defendant helped create the responses. He cannot then say that those responses were improper on appeal. As the People v. Bryant Court stated, in the absence of error, there can be no plain error. Your Honors, Parker Court in the Illinois Supreme Court decision stated very clearly the jury instruction is proper. Therefore, there can be no plain error analysis under either the prong of close evidence or great magnitude of grave error. Do you have any questions for me, Your Honors? Thank you, Counsel. Thank you, Your Honor. Rebuttal, please. Thank you, Your Honor. I would mention Mr. Chatman's family says that he had the public defender. I don't know which one it was. Well, the only reason why I said it is sometimes there might be a little different standard if you go out and hire your own attorney. Yeah. I understand. Other than that, I'm open to any questions. Thank you, Your Honors. Thank you. Thank you all for your honors today. I'd like to commend your Honor invite.